## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **PLAINTIFFS** | : | |
| **Linhope International Ltd.;** | : | |
| **House of CB USA, LLC; Sirens** | : | **No. 21-cv-00871 (VLB)** |
| **Design, LLC; and Original Beauty** | : | |
| **Technology Co., Ltd.** | : | |
| | : | **March 13, 2023** |
| **v.** | : | |
| | : | |
| **DEFENDANTS** | : | |
| **Jianqing Ltd., and** | : | |
| **Jianqing Chen.** | : | |

## <u>RULING AND ORDER ON DAMAGES</u>

In this trademark infringement action, the Court has already granted default judgment on liability and issued injunctive relief.  The only remaining issue is monetary damages.  The Court incorporates its recitation of the facts from its Memorandum of Decision on the Motion for Default Judgment.  Plaintiff Linhope International Ltd. ("Linhope"), the only plaintiff entitled to default judgment, seeks $1.4 million in statutory damages pursuant to 15 U.S.C. § 1117(d); $101,423.55 in attorneys' fees and costs ($99,937.80 in attorneys' fees and $1,485.75 in costs) pursuant to 15 U.S.C. § 1117(a); and an unspecified amount of punitive damages pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110g(a).  For the following reasons, the Court awards statutory damages in the amount of $1,050,000.00 (i.e., $75,000.00 per mark); costs in the amount of $1,485.75; and punitive damages in the amount of $2,484.00.  The Court denies the request for attorneys' fees.

## I.     PROCEDURAL BACKGROUND

The Court issued a memorandum of decision on September 30, 2022, granting in part and denying in part Plaintiffs' motion for default judgment.  [*See* Dkt. 30 (Mem. Decision).]  With respect to liability, the Court found default judgment warranted as to Linhope on the following counts: Count 1, false designation of origin (counterfeit) in violation of 15 U.S.C. § 1125(a)(1); Count 2, dilution in violation of 15 U.S.C. § 1125(c)(1); Count 3, cyberpiracy in violation of 15 U.S.C § 1125(d)(1); Counts 4 through 15, cancellation of trademark registrations under 15 U.S.C. §§ 1052(d), 1064 and 1119; Counts 19 and 20,  violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g(a); and Count 21, common law trademark infringement.  The Court denied default judgment for all other claims as to Linhope and for all claims as to the other plaintiffs.  The Court also ruled that Defendant Jianqing Chen is liable for the actions of Defendant Jianqing Ltd. ("Company").

As for relief, the Court granted in part the requested injunctive relief but concluded that the amount of monetary damages, attorneys' fees, and costs required additional briefing.  Specifically, the Court stated: "Because of the outstanding legal issues, the Court finds that an award of statutory damages, punitive damages, and attorneys' fees and costs are premature at this time. Plaintiffs may submit evidence supporting damages should they believe evidence would aid the Court."  [*Id.* at 21.]

Linhope filed a motion for monetary damages, seeking $1.4 million in statutory damages and $101,423.55 in attorneys' fees and costs.   Linhope

supplemented its motion to request an unspecified amount of punitive damages for the CUTPA violation.  Linhope only submitted evidence concerning its attorneys' fees request.  Defendants failed to respond to the motion.

## II.   DISCUSSION

As the Court explained in its decision on liability, "a defendant who defaults … admits all well-pleaded factual allegations contained in the complaint."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).  Even though the allegations are deemed admitted for the purposes of liability, default is not an admission of damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  It is the plaintiff's burden to prove damages by a preponderance of the evidence for Lanham Act damages.  *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014) (holding the preponderance of the evidence standard applies, in the patent case, because the statute "demands a simple discretionary inquiry" and "imposes no specific evidentiary burden, much less such a high one"); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 628 F. Supp. 2d 312, 322 (E.D.N.Y. 2009) (finding preponderance of the evidence standard applied to 15 U.S.C. § 1117(b), a subsection that similarly lacks burden of proof language).  The preponderance of the evidence standard applies to CUTPA damages too.  *See Whitaker v. Taylor*, 99 Conn. App. 719, 735 (2007) (stating "the ordinary preponderance of the evidence standard is appropriate" when seeking punitive damages under CUTPA); *see also Stuart v. Stuart*, 296 Conn. 26, 39 (2010) (using CUTPA punitive damages statute as an example in stating the "general rule [is] that when a civil statute is silent as to the applicable standard of

3

proof, the preponderance of the evidence standard governs factual determinations required by that statute") (internal quotation marks omitted).

A.  Lanham Act Damages

Section 1117 of Title 15 of the United States Code permits a plaintiff to recover (1) defendant's profits; (2) plaintiff's damages; and (3) costs for a defendant's violation of the counterfeit and cyberpiracy statutes, 15 U.S.C. §§ 1125(a), (d), and for a defendant's willful dilution of the mark, 15 U.S.C. § 1125(c). *See* 15 U.S.C. § 1117(a).  Instead of profits or damages, a plaintiff may alternatively recover statutory damages for a cyberpiracy violation under 15 U.S.C. § 1117(d). For "exceptional cases," the prevailing party is entitled to "reasonable attorney fees."  15 U.S.C. § 1117(a).

Linhope seeks $1.4 million in statutory damages for the cyberpiracy violation under § 1117(d)(1).  Having obtained default judgment for other Lanham Act violations, it appears Linhope has elected to forego actual damages under those counts.  Linhope also seeks $101,423.55 in attorneys' fees and costs under § 1117(a).

1.  *Statutory Damages*

When a defendant violates the cyberpiracy statute, 15 U.S.C. § 1125(d)(1), a plaintiff may recover statutory damages "in the amount of not less than $1,000 and nor more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d).  Statutory damages serve both a compensatory and a punitive purpose. *See Mamiya Am. Corp. v. HuaYi Bros., Inc.*, No. 09–CV–5501 (ENV)(JO), 2011 WL 1322383, at *7 (E.D.N.Y. Mar. 11, 2011).  "Congress enacted the statutory damages

4

remedy in trademark counterfeiting cases because evidence of a [cyberpirate's] profits is almost impossible to ascertain since records are frequently nonexistent, inadequate, or deceptively kept." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 371 (S.D.N.Y. 2020) (internal quotation marks omitted).   Statutory damages are "particularly useful" for default judgment actions where the plaintiff does not have the benefit of discovery. *Campbell v. Huertas*, No. 20-CV-3471 (KAM), 2023 WL 1967512, at *7 (E.D.N.Y. Feb. 13, 2023); *Church & Dwight Co., Inc. v. Kaloti Enter. of Michigan, LLC*, 697 F. Supp. 2d 287, 291 (S.D.N.Y. 2009) (citation omitted) ("The award of statutory damages is particularly appropriate in the default judgment context where plaintiff is without the benefit of any disclosure by the infringer, leaving damages uncertain.").

Neither the United States Supreme Court nor the Second Circuit has ever established how to determine "just" statutory damages in a trademark infringement case.  The Second Circuit has, however, evaluated identical language in a copyright case, *Fitzgerald Publishing Company v. Baylor Publishing Company*, 807 F.2d 1110 (2d Cir. 1986).  There, the Second Circuit outlined seven factors: (1) "expenses saved and the profits reaped," (2) plaintiff's lost revenue, (3) "the value of the copyright," (4) deterrent effect on others, (5) defendant's innocence / willfulness, (6) defendant's cooperation in providing records, and (7) "potential for discouraging the defendant."  *Id.* at 1117.  Since then, courts within the Second Circuit have adopted these factors for trademark infringement cases.  *See, e.g., Spin Master*, 463 F. Supp. 3d at 371; *Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17 Civ. 1927 (PAE) (GWG), 2020 WL 3564485, at *10 n.5 (S.D.N.Y. July 1, 2020); *Mamiya*,

2011 WL 1322383, at *7.  "Within the[ ] statutory limits courts have considerably broad discretion to balance the punitive, deterrent function of an award against the direction that it not constitute a windfall for prevailing plaintiffs."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x 19, 22 (2d Cir. 2012) (internal quotation marks omitted).

Expenses and Profits Reaped / Lost Revenue.  The first and second factors cannot be readily determined by virtue of Defendants' default.  *See, Experience Hendrix*, 2020 WL 3564485, at *11 (collecting cases); *Mamiya*, 2011 WL 1322383, at *7 (stating defendant's "default having made it impossible for [plaintiff] to determine the profits accrued … through the unauthorized use of the Profoto Marks, statutory damages are particularly appropriate here").  Courts have inferred "a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range."  *AW Licensing, LLC v. Bao*, No. 15-cv-1373 (KBF), 2016 WL 4137453, at *3 (S.D.N.Y. Aug. 2, 2016).  As Linhope explained in its motion, the quantity and breadth of Defendants' infringement—14 domain names on a "global scale"—weighs in favor of a statutory damages award at the high end. [Dkt. 31 (Mot. Damages) at 4.]

Mark's Value.  The HOUSEOFCB brand targets women between ages 17 and 34, "who are interested in celebrity pop culture, fashion and social media."  [Dkt. 1 (Compl.) ¶ 38.]   Linhope's HOUSEOFCB Instagram account has 3.2 million followers.  [*Id.* ¶ 40.]  Plaintiff Linhope's combined brick-and-mortar and website sales totaled $21.5 million in 2018, $24.0 million in 2019, and $21.5 million in 2020.  "Courts can infer from well-known reputations of most or all of the trademarks and

the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable." *Spin Master*, 463 F. Supp. 3d at 373 (internal quotation marks omitted).  The Court concludes the mark is highly valuable.

**Deterrent Effect on Others.**  "Large judgments are typically seen as deterrents to the defendant and others," even when the chance of enforcing judgment against a defaulting defendant is small. *AW Licensing*, 2016 WL 4137453, at *3.  Given the widespread nature of Defendants' infringement, the Court finds the need to deter is high, militating in favor of statutory damages at the high end.

**Defendant's Willfulness.**  Linhope obtained favorable decisions against Defendants on four previous matters: one before the United Kingdom High Court in 2020 and three before the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center between 2020 and 2021.  Defendants did not comply with any of the orders.  For example, two days after the United Kingdom ("UK") High Court enjoined Defendant Chen from infringing on one of Linhope's marks on August 4, 2020, Defendant Company applied for a United States Patent and Trademark Office ("USPTO") trademark registration and falsely claimed to have been using the mark in May 2020.  [*See* Dkt. 1 ¶ 59.]  After the third WIPO ruling—in which the WIPO Panel ordered Defendants' domain names to be transferred to Linhope—Defendants continued to sell products from those websites.  [*Id.* ¶ 92.]  Defendants' conduct that has been deemed admitted is proof positive that they knew they were infringing on the marks; that is, as they were being shut down in the UK, they shifted their unlawful activity to the United States.  Defendants could have litigated the case and/or appealed the judgment; instead,

they changed venues.  This conduct is willful.  *See Sound United*, 2022 WL 467718, at *3 (stating, in the counterfeit context, "The repeated and surreptitious nature of defendants' infringements persuades the court that the violations were willful."); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09 CV 4810(RRM)(ALC), 2011 WL 1131401, at *4 (E.D.N.Y. Mar. 11, 2011) (finding willfulness in a counterfeit case for defendants' conduct "both in continuing to operate the websites and in mailing a counterfeit watch to Plaintiff's investigator after receipt of the first cease-and-desist letter").

In addition, the Court already found that Defendants acted in "bad faith" because their registered domain names were confusingly similar to Linhope's marks, Linhope's customers were unknowingly diverted to Defendants' websites and unintentionally bought "knockoff" products, and there was not an otherwise bona fide noncommercial or fair use of the domain names.  [*See* Dkt. 30 at 16 (evaluating violation under 15 U.S.C. § 1125(d)(1)(B)(i)).]  When a defendant uses marks that are "virtually identical" to the registered marks, courts have concluded the defendant acts willfully.  *See Spin Master*, 463 F. Supp. 3d at 374.  Accordingly, by virtue of the Court's ruling on liability, Defendants acted willfully.

**Defendants' Cooperation with Records.**  As Linhope points out, because Defendants never answered or defended the case, their default necessarily means they have not provided any records.  This factor therefore warrants a high statutory damages.  *See Experience Hendrix*, 2020 WL 3564485, at *12.

**Potential for Discouraging Defendant.**  This factor weighs heavily in favor of statutory damages at the high end.  As the Court previously stated, Defendants

ignored four previous orders against it, including an injunction from the UK High Court.  Absent a significant deterrence, Defendants have demonstrated they will not comply with court orders.  *See id.*

While these factors weigh in favor of an award at the high end of statutory damages, the Court nonetheless finds the statutory maximum is not warranted. Linhope did not submit any evidence of actual harm in the Motion for Costs and Fees, and—as courts have pointed out—the failure to do so may militate against the statutory maximum.  *See, e.g., Rolex Watch*, 2011 WL 1131401, at *5 ("Plaintiff's request for an award of $1,000,000 per mark is nevertheless a bit high in the absence of documentation of Defendants' profits, evidence of sales from legitimate retailers, or fraud or misconduct before the tribunal."); *Mamiya*, 2011 WL 1322383, at *8 (awarding slightly above ten times the statutory minimum for each mark where the court found defendant acted willfully but the plaintiff "provide[d] limited evidence of actual harm … noting only the potential for lost sales" and failing to explain why "an award greater than the statutory minimum is necessary for deterrence").  The failure to provide evidence of actual damages must be balanced by the fact that the plaintiff should not be punished for the defendant's default.  *See Mamiya,* 2011 WL 1322383, at *7 ("[S]tatutory damages are a substitute for actual damages, and should replicate as nearly as possible the actual harm done to the successful plaintiff without punishing it for lacking information on the issue due to the absent defendant's default.").

This balance was well-struck in *Experience Hendrix LLC v. Pitsicalis*, a copyright infringement and trademark infringement case where the defendants

9

defaulted at various points during litigation.  The plaintiffs sought the maximum statutory damages against two defendants, one under the Copyright Act ("copyright defendant") and the other under the Anticybersquatting Consumer Protection Act ("cybersquatting defendant").  *See Experience Hendrix*, 2020 WL 3564485, at *9−10.  The court evaluated the *Fitzgerald* factors and awarded damages below the statutory maximum for the defendants.  With respect to the copyright defendant, the court observed he had previously been enjoined from using the plaintiff's copyrighted material.  *See id.* at *12.  The Court reasoned, "There is no doubt that [the defendant's] flagrant disregard for judicial proceedings and the fact that he has been haled into court repeatedly for violating plaintiffs' intellectual property rights justifies a significant award of statutory damages."  *Id.* As for the cybersquatting defendant, the court observed "there is no evidence that [the defendant] had previously been made aware of the illegality of his conduct." *Id.*  For both, the court also acknowledged there lacked evidence of plaintiff's actual damages or the defendants' actual profit, explaining that such a situation might "counsel for an award well below the statutory maximum."  *Id.* at *12–13 (collecting cases).  The Court ultimately awarded statutory damages of $125,000 (out of the $150,000 maximum) against the copyright defendant, and $10,000 (out of the $100,000 maximum) in statutory damages for each domain name against the cybersquatting defendant.

This case is similar to *Experience Hendrix* in many respects.  First, between the UK Court and WIPO decisions, both Defendants have been "haled to court repeatedly" for trademark infringement but flagrantly disregarded judicial and

administrative proceedings.  Second, Defendants' default forecloses Linhope's ability to prove actual damages or Defendants' profits.  While Linhope did not submit any evidence of actual damages or Defendants' profits, it did attach as an exhibit to the Complaint customer complaints, indicating they intended to purchase House of CB products but instead received a "knock off" product of inferior quality.  [*See* Dkt. 1-15 (Ex. O, Customer Complaints).]  Despite the fact that the domain names were confusing, Linhope appears to have suffered no reputational damage from these purchases because the individuals were aware the products were not authentic.  In considering the facts of this case in comparison to statutory damages from other cases, including *Experience Hendrix*, the Court finds that $75,000 per mark for a total of $1,050,000—an award at the high end of the statutory damages range but not the statutory maximum—is warranted.

### 2.   *Attorneys' Fees*

Linhope moves for attorneys' fees and costs under 15 U.S.C. § 1117(a). Section 1117(a) states a court "may award reasonable attorney fees to the prevailing party" for claims brought under the Lanham Act in "exceptional cases." According to the Second Circuit, an "exceptional" case under this provision is one that meets the "exceptional case" criteria under the Patent Act attorneys' fees provision, as defined by the Supreme Court in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545 (2014).  *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 531 (2d Cir. 2018) (remanding attorneys' fees request sought pursuant to 15 U.S.C. § 1117(a) and ordering the district court to apply the *Octane Fitness* test).

The *Octane Fitness* Court's definition of an "exceptional" case "is simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 553−54.  Relevant factors to this determination include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).  Whether a case is "exceptional" is a "case-by-case exercise of [the district court's] discretion," under the "totality of the circumstances." *Id.* at 554.

Linhope relies on *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108-109 (2d Cir. 2012)—a Second Circuit case holding evidence of willfulness and bad faith makes a case "exceptional"—even though the case was abrogated on these grounds after *Octane Fitness*.  [*See* Dkt. 31 at 8.]  To the extent that Linhope believes its case is "exceptional" simply because the Court ruled Defendants acted in "bad faith" for the purposes of liability, it is incorrect.  Indeed, post-*Octane Fitness*, the Second Circuit clarified that willful infringement does not <u>automatically</u> warrant attorneys' fees.  *See 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (remanding attorneys' fees where district court based decision on willfulness "[b]ecause *Octane Fitness* establishes no presumption … that cases involving willful infringement are necessarily 'exceptional'").  In *4 Pillar Dynasty*, the defendants argued that *Octane Fitness* set a lower standard than *Luis*

*Vuitton*, *see id.* at 215−16; in other words, "bad faith" and "willful" violations still render a case *per se* "exceptional."  The Second Circuit rejected this argument, explaining, "Although Plaintiffs are indeed correct that *Octane Fitness* provides district courts with broad discretion to award attorney's fees, it still demands that courts engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances' in determining whether the case is 'one that stands out from others,' so as to warrant an award of fees."  *Id.* at 216 (quoting *Octane Fitness*, 572 U.S. at 554).  Counsels' decision to ignore binding precedent (be it consciously or by putting their proverbial heads in the sand) calls into question whether they have fulfilled their ethical duties of candor to the court and diligence to the client.[1]

After evaluating this particular case, the Court finds that Linhope has failed to meet its burden of establishing this case is "exceptional."  As an initial matter, counsel failed to identify any other case with comparable facts where a court found exceptionality.  Generally, lower courts have interpreted *Octane Fitness* to mean that default judgment does not necessarily make a case "exceptional."  *See, e.g., Experience Hendrix*, 2020 WL 3564485, at *15 ("[M]erely defaulting does not make a case exceptional."); *Travel Leaders Grp., LLC v. Corley*, No. 19-CV-1595 (GBD)

---

[1] At the bottom of a lengthy footnote in which counsel acknowledges *Octane Fitness* without recognizing the case requires a case-by-case assessment, counsel states: "Plaintiff Linhope respectfully requests leave of the Court to reserve presenting reasons for an award of attorneys' fees under the less-restrictive factors enumerated in *Octane*." [Dkt. 31 at 9.]  Counsel may not have a second bite at the apple.  They made the strategic decision to make <u>one</u> argument (excluding another) and simply failed to analyze and argue the appropriate legal standard.  This Court identified and assessed exceptionality under the *Octane Fitness* standard.  The only means by which counsel could make another argument is by moving the Court for reconsideration, but that standard does not apply to this circumstance.

(JLC), 2019 WL 6647319, at *14 (S.D.N.Y. Dec. 5, 2019) ("[T]he Court shares the view of several district courts in other circuits that [a] failure to respond does not make the case exceptional, otherwise every default case would warrant attorney's fees, which is not supported by the statute.") (internal quotation marks omitted).  Given *Octane Fitness*'s mandate to address exceptionality on a case-by-case basis, this Court agrees.

With respect to the "substantive strength of the party's litigating position," *Octane Fitness*, 572 U.S. at 553−54, the fact that Linhope alleged facts sufficient to be granted default judgment does not necessarily mean the case is exceptionally strong.  *See Vivint, Inc. v. Christensen*, 2019 WL 131857, at *2 (D. Utah, Jan. 8 2019) ("And although the complaint alleges facts to support its state and federal cybersquatting claims, merely establishing the existence of meritorious causes of action is not enough to show that the claims are exceptionally strong. Otherwise, the exceptional case clause would be converted into a prevailing party clause."). Take, for instance, *Travel Leaders*, 2019 WL 6647319, at *8−9, a case in which the court found a defaulting defendant liable for trademark infringement under § 1125(a) of the Lanham Act.  While the court found the defaulting defendant acted "willfully" for purposes of liability because the complaint's allegations stated "defendants acted willfully," made "blatantly false statements" and one defendant used "multiple aliases to carry out his scheme," the court nonetheless reasoned,

> While these arguments support the conclusion that the infringement was willful, none of them suggest that this <u>fairly routine case</u> involving false advertising and/or trademark infringement "stands out" with respect to either the strength of plaintiffs' litigating position or the unreasonable manner in which the case was litigated. Indeed, "false

> or misleading representation of fact" is an element of the statute itself.
> *See* § 1125(a).

*Id.* at *14 (emphasis added).  On the one hand, this case is more egregious, because Defendants ignored international orders and continued to sell infringing products despite those orders.  On the other hand, the Court's award of default judgment merely establishes the pleadings state a claim on which relief may be granted, *see Mickalis Pawn Shop*, 645 F.3d at 137, and viability does not speak to strength. Linhope has not presented any evidence on damages, and so the Court has no basis to rule the case is stronger than merely "viable."  For the same reasons articulated by the *Travel Leaders* court, this Court finds that Linhope's case is not "exceptional" simply because the Court ruled Defendants acted in "bad faith" and made "material representations" for liability purposes without addressing the merits.

As for "the manner in which the case was litigated," *Octane Fitness*, 572 U.S. at 553−54,  the Court finds that Defendants' default is not "unreasonable" so as to make the case "exceptional."  There is a difference between a defaulting defendant that never appears in the first place versus one that appears but ultimately abandons the case.  For the former, the general principle is that the "defaulting defendant[ ] could not have litigated unreasonably because [it] did not litigate at all."  *Travel Leaders*, 2019 WL 6647319, at *14.  Conversely, the latter may involve a defendant ignoring court orders, violating discovery obligations, making specious arguments, filing frivolous motions or appeals—in sum, being unduly litigious or delaying litigation.  *See Experience Hendrix*, 2020 WL 3564485, at *16

(collecting cases).  Because Defendants never appeared here, none of the latter circumstances are present.

The Court acknowledges the jurisprudence on attorneys' fees varies greatly. After weighing the facts of the case and considering "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," the Court concludes this case is not "exceptional." *See Octane Fitness*, 572 U.S. at 554.

Even if the Court were to find the case "exceptional"—which it does not— the requested attorneys' fees are unreasonable.  Linhope staffed the case with a partner, a special counsel, an associate with 20 years of experience, and two paralegals.  [*See* Dkt. 32 (Rispoli Decl.) ¶ 9.]  The partner billed 55.9 hours at rates between $675 and $775 per hour, the special counsel billed 6.8 hours at rates between $825 and $910 per hour, the associate billed 158.8 hours at rates between $410 and $465 per hour, and the two paralegals billed a total of 10.7 hours at rates between $305 and $420 per hour.  [*See id.* ¶¶ 10−15.]  Simply put, the Court has never seen such astronomical fees and hours in the default judgment context, nor has it found a comparable case.

The fee ledger is problematic for several reasons.  First, default judgment requires *de minimis* work, especially in circumstances such as this where the defendants fail to appear.  *See Antetokounmpo v. Constantino*, No. 21-CV-2198 (JMF) (JLC), 2021 WL 5916512, at *11 (S.D.N.Y. Dec. 15, 2021) ("Courts in this district have found that the time and labor required for seeking a judgment by

default, pursuant to Fed. R. Civ. P. 55 and based on the defendant's failure to plead or otherwise defend, as well as the level of skill required to perform the legal tasks in connection with it, are … *de minimis*.") (internal quotation marks omitted).  One exception would be where the plaintiff needed to spend significant resources to identify and locate the defendant.  This does not apply, because Linhope discovered Defendants' identity through previous litigation.  Second, counsel appears to be billing for work performed in connection with its non-Lanham Act claims, its international matters, and its USPTO trademark applications.  When attorneys' fees are sought under the Lanham Act, the prevailing party is only entitled to fees for work expended on the Lanham Act counts unless the non-Lanham Act claims "are so intertwined that it is *impossible to differentiate* between them."  *See Sleepy's*, 909 F.3d at 531 (internal quotation marks removed) (emphasis in original).  Linhope does not even argue the claims <u>within this litigation </u>are difficult to differentiate, let alone acknowledge why it is billing for work on matters separate from this case.  Counsel's attempt to recover fees outside of the Lanham Act, including for work on other cases and before the USPTO, is therefore wholly inappropriate.  Lastly, a significant portion of the fees appear to relate to internal meetings, conferences, and administrative tasks.  Hours devoted to these tasks tend to be discounted, especially when they are excessive.  *See John Wiley & Sons, Inc. v. Book Dog Books,* LLC, 327 F. Supp. 3d 606, 645−46 (S.D.N.Y. 2018).  A significant percentage deduction would be required even if attorneys' fees were appropriate.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA*

*Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *John Wiley*, 327 F. Supp. 3d at 640 (explaining courts need not perform a line item review).

### 3.    *Costs*

Linhope seeks $1,485.75 in costs, which are recoverable under 15 U.S.C. § 1117(a).  Attorney Rispoli stated under penalty of perjury that Linhope was billed for the following costs: the court filing fee of $402.00, Xact Data Discovery (Infringing Website Capture) fee of $833.75, and a certificate of good standing fee of $200.00.  [*See* Dkt. 32 ¶ 15 (citing Ex. A Line Nos. 241−244).]  "Litigation costs are generally recoverable if they are necessary for the representation of the client." *Antetokounmpo*, 2021 WL 5916512, at *12.  The Court finds these costs, related to court filings and investigation, are necessary to represent the client.  The Court awards these costs totaling $1,485.75 to Linhope.

### B.    CUTPA Punitive Damages

When a defendant violates CUTPA, *see* Conn. Gen. Stat. § 42-110a *et seq.*, "[t]he court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."  Conn. Gen. Stat. § 42-110g(a).  To award punitive damages under § 42-110g(a), "evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Ulbrich v. Groth*, 310 Conn. 375, 445 (2013).  Put another way, "the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." *Id.* (internal quotation marks omitted).  CUTPA is a remedial statute that must be "construed liberally … to effectuate its public policy goals," which are primarily to "eliminat[e]

or discourag[e] unfair methods of competition and unfair or deceptive acts or practices." *Stone v. East Coast Swappers LLC*, 337 Conn. 589, 600 (2020) (internal quotation marks and citations omitted).   The Connecticut Supreme Court has explained that punitive damages under CUTPA "are focused on deterrence and punishment of particular commercial actors."   *Id.* at 603.   The movant has the burden to prove by a preponderance of the evidence the amount of punitive damages in a CUTPA action.   *See Whitaker*, 99 Conn. App. at 735.

When determining the specific punitive damages amount, a court must evaluate several factors articulated by United States Supreme Court in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) and adopted by the Connecticut Supreme Court in *Ulbrich*, 310 Conn. at 454−55.   The factors are: (1) "the 'degrees of relative blameworthiness,' i.e., whether the defendant's conduct was reckless, intentional or malicious;" (2) "whether the defendant's '[a]ction [was] taken or omitted in order to augment profit;'" (3) "whether the wrongdoing was hard to detect;" (4) whether the injury and compensatory damages were small, providing a low incentive to bring the action;" and (5) "whether the award will deter the defendant and others from similar conduct, without financially destroying the defendant."   *Ulbrich*, 310 Conn. at 454−55 (quoting *Exxon Shipping*, 554 U.S. at 493−94, 503−04).   "Of these factors, the reprehensibility of a defendant's conduct is the most important."   *Ulbrich*, 310 Conn. at 455.   To determine "reprehensibility," the court must consider whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial

vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* at 455−56 (quoting *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 219 (2003)).

Linhope supplemented its motion for damages, which focused on statutory damages and attorneys' fees under the Lanham Act, with a three-page brief seeking an unspecified amount of punitive damages under CUTPA. [*See* Dkt. 34 (Supp. Mot.).] Linhope argues the Court should consider a) the "egregious scale" of Defendants' infringement of 14 marks, b) the Court's finding Defendants acted in "bad faith" as required for liability under the Lanham Act cyberpiracy statute, and c) "the potential for discouraging the Defendants and others." [*Id.* at 2.] This argument loosely relates to the statutory damages standard under the Lanham Act, as evidenced by the fact that Linhope only cited two cases in its brief, and they both exclusively address the Lanham Act. Linhope does not mention the CUTPA punitive damages standard at all, let alone address the *Ulbrich/Exxon* factors. What's more, Linhope offered no evidence.

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Sylvia v. Kensington Auto Serv., Inc.*, 2021 WL 2634502, at *4 (D. Conn. June 26, 2021) (citing *Greyhound* in denying CUTPA punitive damages after defendant defaulted); *St. Denis v. New Horizon Credit, Inc.*, No. 3:05 CV 1952 JBA, 2006 WL 1965779, at *3 (D. Conn. July 12, 2006) ("Because a default judgment entered

precluding development of the factual record, and even accepting as true all factual allegations in plaintiff's complaint (and his affidavit), except for those relating to damages, the Court cannot determine whether defendant's conduct involved violations beyond this plaintiff so as to give context to the violation here and permit assessment of whether defendant's conduct reflects a sufficiently flagrant disregard of the rights of plaintiff and/or the Connecticut licensing scheme to warrant punitive damages.").

The Court has considered the admitted facts, the *Exxon Shipping* factors, and the fact that Defendants' default is not an admission of damages.   The Complaint's Exhibits O and R establish that five individuals suffered from Defendants' unfair practices for a total of $828.00.  The conduct described in these exhibits satisfies the CUTPA punitive damages "recklessly indifferent" standard. The Court's analysis, *supra* at pages 5−7, addresses the first, second, fourth and fifth factors.  In addition, as evidenced by Exhibits O and R to the Complaint, the wrongdoing does not appear hard to detect.  After considering the factors, the Court finds punitive damages in the amount of $2,484.00 (three times $828.00) is appropriate.   Linhope's utter failure to provide applicable law or evidence forecloses an award beyond $2,484.00.  This is especially true, because the Court has already awarded significant statutory damages, which is both compensatory and punitive.  *See Mamiya*, 2011 WL 1322383, at *7.  Given that the Court explicitly directed Linhope to submit evidence of damages "should they believe evidence would aid the Court," but Linhope chose not to do so, the Court finds additional briefing would not be necessary.

III.     **CONCLUSION**

**For the above reasons, the Court grants statutory damages in the amount of $1,050,000.00 ($75,000.00 per mark), grants costs in the amount of $1,485.75, and grants punitive damages under CUTPA in the amount of $2,484.00.  The Court declines to award attorneys' fees on the grounds that this case is not "exceptional" under § 1117(a) of the Lanham Act.  The Clerk is directed to close this case.**

**IT IS SO ORDERED**

_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 13, 2022**